```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Demetria Jordan,                :

         Plaintiff,             :

     v.                         :    Case No. 2:14-cv-2053

                                :    JUDGE MICHAEL H. WATSON
Commissioner of Social Security,     Magistrate Judge Kemp

         Defendant.             :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Demetria Jordan, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits.  That application was filed on February 1, 2011, and alleged that Plaintiff became disabled on October 2, 2009.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on May 8, 2013.  In a decision dated July 15, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on August 27, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on January 30, 2015.  Plaintiff filed her statement of specific errors on March 6, 2015, to which the Commissioner responded on June 10, 2015.  Plaintiff filed a reply brief on June 29, 2015, and the case is now ready to decide.

II. The Lay Testimony at the Administrative Hearing

Plaintiff, who was 56 years old at the time of the administrative hearing and who has one year of college education, testified as follows.  Her testimony appears at pages 37-47 of the administrative record.

Plaintiff first testified that her last job was taking care of her mother-in-law. On October 2, 2009, she woke up with a backache, which was diagnosed in the emergency room as a pinched nerve. Subsequently she learned that she had a herniated disc, and she underwent surgery several months later. Her back had not improved much since then, and she experienced numbness in her left leg. Any activity increased her back pain to the point where she was flat on her back for days afterward.

Plaintiff also testified about past employment. She had worked at Payless Shoes, as a grocery store cashier, at a hotel, and for a temporary services agency. She did not believe she could return to any of those jobs because she was unable to stand for very long, and even sitting was uncomfortable. Her back condition made it hard to sleep. She also discussed her bipolar disorder, which made it difficult to be out in public places.

### III. The Medical Records

The medical records in this case are found beginning on page 240 of the administrative record. The Court will summarize those records, as well as the opinions of the state agency reviewers, to the extent that they are pertinent to Plaintiff's statement of error.

Plaintiff's back surgery occurred on January 24, 2011. Her pre-operative and post-operative diagnoses were lumbar degenerative disc disease with stenosis and herniated disc. She underwent a bilateral posterior lateral instrumented fusion from L4 through S1 with decompressive lumbar laminectomies at L5 and S1. The surgeon, Dr. Shahadi, noted that she had "failed conservative treatment measures ...." (Tr. 258). She was discharged on medications including Nortriptyline, Percocet, and hydrocodone-acetaminophen. (Tr. 257-69). Subsequent x-rays showed that the back was stable and well-aligned but there was some narrowing of the disc space. A treatment note from February

5, 2013 states that Plaintiff had reported continuous back pain since her surgery with pressure and burning, unrelieved by over-the-counter medications. She said that resting helped but any activity exacerbated the pain. Plaintiff also said the surgery did not resolve her foot numbness. Her examination was essentially normal. Physical therapy was recommended and neurontin was prescribed. (Tr. 314-15).

Dr. Hess, a neurological surgeon, performed a consultative physical examination on August 10, 2011. Plaintiff reported pain since January, 2011, with difficulty walking due to left foot numbness and back pain, and associated difficulty standing and sitting. On examination, she had a minimal left antalgic gait. There was bilateral paraspinous muscle spasm present and range of motion of the lumbar spine was impaired. Dr. Hess diagnosed a herniated disc at L4-L5 with sciatic nerve root involvement as well as anesthesia-left, L5 root. He noted that she had difficulty walking, crouching, kneeling, and stooping. Dr. Hess commented that Plaintiff "is able to get around but rest restrictions for sitting, walking and standing are still present." (Tr. 304-06).

There are no records of treatment for psychological issues. However, Dr. Meyer performed a consultative evaluation on June 8, 2011. Plaintiff told Dr. Meyer she had been diagnosed with bipolar disorder and had symptoms of that disorder all of her life. Her daily activities were not extensive and she did not socialize. She could walk three blocks to the store and prepare one meal a day. Plaintiff was intermittently tearful during the evaluation and reported crying spells. Her long-term memory appeared to be severely impaired. She also had a history of crack cocaine dependence in full remission. Dr. Meyer rated Plaintiff's GAF at 60 based on her subjective report, diagnosed bipolar disorder, and concluded that Plaintiff could comprehend

and follow basic work instructions, could maintain adequate concentration for basic work tasks, would have issues relating to others over a sustained period of time, and could respond appropriately to simple and repetitive work tasks. (Tr. 291-303).

State agency reviewers also expressed their opinions about Plaintiff's functional capacity. On the physical side, both reviewers, Drs. Manos and Lewis, concluded that Plaintiff could do light work with some postural restrictions and avoidance of workplace hazards. (Tr. 62-64, 78-81). From a psychological standpoint, Dr. Rudy found that Plaintiff had limitations in the areas of dealing with detailed instructions, working in close proximity with others, working in a fast-paced environment, dealing with the general public (a marked restriction in that area), and responding to changes in the work setting, but she could respond appropriately to a work setting where tasks were uncomplicated and repetitive. (Tr. 64-66). Dr. Marlow concurred in these findings. (Tr. 81-83).

### IV.   The Vocational Testimony

Dr. John Finch, a vocational expert, testified at the administrative hearing. His testimony begins at page 48 of the administrative record.

Dr. Finch began by testifying about Plaintiff's past relevant work. He said that Plaintiff's housekeeper job was light and unskilled; her temporary services job, which was working as a material handler, was heavy and semi-skilled; and the cashier job was light and unskilled.

Dr. Finch was then asked to answer some questions about a hypothetical person who could do light work and who could never climb ladders, ropes, or scaffolds, could use foot controls only occasionally with the left foot, and who could perform other postural requirements of work only occasionally. The person also

could not be exposed to unprotected heights and was limited to simple, routine, repetitive tasks in a low-stress environment involving no assembly line work and only occasional changes to the work setting.  He or she would be off task for 5% of the workday and could have only incidental contact with the public and occasional contact with supervisors and coworkers.  According to Dr. Finch, such a person could do Plaintiff's past work as a housekeeper, and could also work as a mail sorter or retail marker.  However, if the person would be off task 20% of the time, or would need four additional 15-minute breaks during the day, he or she could not be employed.

In response to additional questions from Plaintiff's counsel, Dr. Finch testified that none of the light jobs he identified would permit the worker to stand or sit at will. Also, someone who either was frequently unable to respond appropriately to supervisors or coworkers, or who was frequently unable to deal with changes in the work setting, could not be employed competitively.

    V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11-26 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirement of the Social Security Act through September 30, 2011.  Next, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 2, 2009.

Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including status post a stable posterior lumbar fusion at L5-S1, associated with degenerative disc disease of the lumbar spine, a herniated disc at L5-S1, lumbar radiculopathy, and a bipolar

disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1), including sections 12.04 and 12.06.

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level except that she could never climb ladders, ropes, or scaffolds or be exposed to unprotected heights.  Physically, she could occasionally use her left foot to operate foot controls and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Further, she was limited to low-stress work defined as the performance of tasks which are simple, routine, and repetitive in nature and which could be performed in an environment where she could be off task for 5% of the time, which did not involve more than occasional changes to the work setting, which did not include assembly line work, and which involved no more than occasional interaction with supervisors and coworkers and no contact with the public.

The ALJ found that, with these restrictions, Plaintiff could perform her past relevant work as a housekeeper.  The ALJ also concluded that she could work as a mail sorter or retail marker and that these jobs existed in significant numbers in the region, the State, and nationally.  Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises a single issue.  She asserts that the ALJ erred in his analysis of the consultative opinions from Dr. Meyer and Dr. Hess.  This issue is considered under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the

Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

    Plaintiff makes a very straightforward argument. She asserts that under Social Security Ruling 96-6p, an ALJ is required to state the weight given to every medical opinion, and notes that the ALJ in this case did not do so. She contends that this failure is reversible error because Dr. Hess' opinion, fairly read, includes restrictions which are inconsistent with light work, and because there are also some statements in Dr. Meyer's report which could be interpreted to be more restrictive than the limitations contained in the ALJ's finding about mental residual functional capacity.

After making an extensive credibility finding, and concluding that the record, including the objective medical findings, did not support Plaintiff's claim of total disability, the ALJ turned to the opinion evidence. The ALJ first noted that state agency physicians and psychologists are experts in disability evaluation, and concluded that their opinions were consistent with and supported by the evidence. The ALJ "accepted [them] as an accurate representation of the claimant's status" and found them "consistent with the greater weight of the medical evidence of record and also with other credible opinion evidence." (Tr. 24). The ALJ did not assign any specific weight to the consultative examiners' opinions, or, in fact, even mention them in that portion of the administrative decision in which the ALJ determined Plaintiff's residual functional capacity, other than the statement contained in finding No. 5 that the residual functional capacity assessment was "consistent with the opinions of [the state agency reviewers] and Dr. Hess." (Tr. 20). Dr. Meyer's opinion is mentioned only in the section of the administrative decision relating, in part, to whether Plaintiff suffered from a severe psychological impairment. (Tr. 17).

The Court notes, first, that Plaintiff's reliance on SSR 96-6p appears to be misplaced. That Ruling applies to state agency medical and psychological consultants and other program physicians whose opinions "must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review." Consultative examiner opinions qualify as other medical opinions and are evaluated under 20 C.F.R. §404.1527(c). That subsection requires an ALJ to evaluate every medical opinion and sets forth a list of factors to be considered, including whether the source of the opinion examined or did not examine the claimant, <u>see</u>

§404.1527(c)(1), and other factors such as the supportability of the opinion, its consistency with the record, the specialization of the source, and "other factors."  See §404.1527(c)(3)-(6).  The only specific requirement in subsection (c) concerning articulation is the familiar mandate to give good reasons for the weight assigned to a treating source opinion.  Thus, the failure to articulate the weight assigned to either of the consultative opinions does not appear to be a violation of any specific regulation or ruling.

That does not mean, however, that an ALJ is free simply to disregard consultative opinions without comment.  The ALJ must not only evaluate those opinions under §404.1527(c) but provide something in the way of analysis.  Thus, "[a]lthough this explanatory requirement [the one which applies to treating sources] does not apply to opinions from physicians who ... have examined but not treated a claimant ... the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'"  Stacey v. Comm'r of Social Security, 451 Fed.Appx. 517, 519 (6th Cir. Dec. 19, 2011), quoting Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Taking the two consultative opinions separately, the Court concludes that, with respect to Dr. Meyer's opinion, the ALJ committed no reversible error.  The ALJ was certainly aware of the opinion and cited extensively to its content and conclusions, although not in the section of the administrative decision devoted to residual functional capacity.  The ALJ also summarized the important conclusions of that opinion using this language:

> Dr. Meyer assessed that the claimant had no impairment of her ability to understand, remember, and follow instructions in order to complete basic work tasks; maintain attention and concentration to complete basic work tasks; interact with others on a time-limited on a one-on-one basis; and withstand work-related stress for successful completion of simple and repetitive tasks.

(Tr. 17).  That is an accurate rendition of Dr. Meyer's

conclusions.  Dr. Meyer did indicate concerns with Plaintiff's emotional stability in the workplace, but only if she were confronted with stress above and beyond the completion of simple and repetitive tasks or were required to relate to others over a sustained period of time.  The state agency reviewers specifically assigned great weight to Dr. Meyer's assessment and similarly concluded that Plaintiff could work with certain restrictions.  The ALJ adopted their opinions in their entirety.  The ALJ's reasoning path is clear here, and, even if it were not quite so transparent, there are no substantial differences between Dr. Meyer's conclusions, those of the state agency reviewers, and the ALJ's mental residual functional capacity assessment.  Consequently, if there had been any error, it was clearly harmless and did not materially affect the outcome of the proceedings below.

    Dr. Hess' opinion stands in a slightly different posture.  There is at least a potential conflict between his evaluation of Plaintiff's physical capacity and the opinions of the state agency reviewers.  As quoted above, Dr. Hess expressed what he called "rest restrictions" relating to Plaintiff's ability to sit, stand, and walk.  The only such restrictions mentioned with specificity in Dr. Hess' report are those related by Plaintiff herself.  At a minimum, those restrictions are not compatible with performing a relatively full range of light work activity.  The state agency appeared to recognize this.  Both at the initial application stage and upon reconsideration, Dr. Hess' opinion was assigned "[n]o weight ... as opinion is non-specific."  (Tr. 62, 78).  That would not likely had been done had the state agency reviewers' opinions been consistent with Dr. Hess' views.  It does not appear that the ALJ recognized this conflict; in fact, the ALJ made an affirmative finding that his residual functional determination was consistent with Dr. Hess' opinion, which he equated with the opinions from Drs. Manos and Lewis.  The ALJ

also stated, in the body of his decision, that "at the time of this August 2011 physical examination [the one performed by Dr. Hess], the examining physician assessed that despite the claimant's symptoms, she retained the capacity for work (Exhibit 10F, page 20) consistent with the residual functional capacity finding concluded in this decision." (Tr. 21-22). That statement does not appear in Dr. Hess' opinion, however, and represents an unreasonable interpretation of his report.

Unquestionably, the ALJ made an error here. Is it significant enough to justify a remand, or it is harmless? The Commissioner asserts only that "it was reasonable for the ALJ to ... conclude that Dr. Hess's observations indicate functional abilities that would allow Plaintiff to work." Memorandum in Opposition, Doc. 18, at 10. The Court has explained, however, why this is not a reasonable conclusion to draw from that report, at least as to work at the light exertional level. The Commissioner's memorandum states elsewhere that "the RFC assessed by the ALJ is consistent with the opinion[]... of [Dr.] Hess, so Plaintiff can show no harmful error." Id. at 4. The Commissioner makes no other harmless error argument, and the Court therefore considers any such argument to be waived. See Vreeland v. Astrue, 2007 WL 5414923, *16 (W.D. Wisc. March 27, 2007)("the commissioner has ... waived any harmless error argument by failing to raise it in her brief); see also Jones v. Comm'r of Social Security, 2014 WL 4715727, *8 n. 18 (N.D. Ohio Sept. 22, 2014)("The Commissioner's harmless error argument is cursory and vague. Thus, the Commissioner has arguably waived a harmless error argument"), citing McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997). Consequently, a remand should be ordered so that the ALJ can properly interpret and consider Dr. Hess' report, obtain clarification of that report, if necessary, and make a new determination about Plaintiff's physical residual functional capacity.

### VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp  
United States Magistrate Judge